**SO ORDERED.**

**SIGNED this 2nd day of July, 2026.**



_Mitchell L. Herren_
Mitchell L. Herren
Chief United States Bankruptcy Judge

---

**Designated for Online Publication**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **IN RE:** | |
| **WHITEEAGLE PROPERTIES 22 CORP.,** | **Case No. 25-10770**<br>**Chapter 11** |
| **Debtor.** | |

**Memorandum Opinion and Order
Granting in Part and Denying in Part First Interim Application for
Allowance and Payment of Attorney Fees and Expenses**

Counsel for Debtor Whiteeagle Properties 22 Corp, the law firm of Mark J.

Lazzo, P.A., filed an interim fee application under 11 U.S.C. § 330,[1] seeking

approval of fees and expenses in this Chapter 11 case. The U.S. Trustee objects to

three aspects of the application,[2] objecting to the award of any fees incurred for

---

[1] All future references to "Bankruptcy Code," "Code," or "§," refer to Title 11 of the United States Code.

[2] The U.S. Trustee appears by Richard A. Kear.

prepetition work, fees for work on a motion to extend the deadline for the filing of a Subchapter V Chapter 11 plan (Debtor has since redesignated and is no longer proceeding under Subchapter V), and fees for multiple office conferences between two attorneys in the firm, where both attorneys billed their time..

The interim fee application is granted in part and denied in part. Denied are $7140 in fees requested for work billed prepetition. The U.S. Trustee's objection to the award of fees for the motion to extend and for office conferences is overruled. Those fees were reasonable for the actual, necessary services rendered and are therefore compensable from the estate.

## I.      Procedural History

Debtor Whiteeagle Properties 22 Corp. is 80% owned by David Rendon and 20% owned by Trevor Fischer.[3] Debtor's assets include commercial real and personal property in Lindsborg, Kansas, and an interest in one parcel of residential real property in Arizona.[4]

Debtor filed its Chapter 11 petition on July 28, 2025, indicating it was a small business debtor under § 101(51D) and electing to proceed under Subchapter V of Chapter 11.[5] No Schedules or supporting documents were filed with the petition and the Court issued an Order to Correct the deficient filing.[6]

---

[3] Doc. 42.

[4] Doc. 41 pp. 2-3, 6.

[5] Doc. 1 p. 2.

[6] Doc. 12.

The same day, July 28, 2025, Mr. Lazzo docketed Debtor's Application to Employ Attorneys.[7] In that Application, Debtor sought to employ Mark J. Lazzo, P.A. as counsel for its bankruptcy estate and proposed compensation of $350 per hour for both Mr. Lazzo and Mr. Balbierz of that firm.[8] Attached to the Application was an "Attorney Affidavit under D. Kan. LBR 2014.1" for each of Mr. Lazzo and Mr. Balbierz. The Affidavits were identical and contained few details. They included bare statements the attorney was disinterested and "does not hold or represent an interest adverse to the estate," does not represent "a creditor of the Debtor," understands the continuing duty to disclose any disinterestedness or adverse interest, and that counsel understands approval of employment is not approval of compensation.[9] Neither the Application nor the Affidavits disclosed the existence of a retainer.

The next day, on July 29, 2025, Debtor filed a Motion to Allow Monthly Payment of Fees and Expenses to Debtor's Counsel.[10] In that motion, counsel requested "monthly payment of fees and expenses in accordance with the regular billing cycles of its law firm," with payment of 100% of the fees and expenses and 10% being held in trust "pending the court's approval of an interim or final fee application."[11]

---

[7] Doc. 3.

[8] *Id.* p. 1.

[9] *Id.* p. 2-3. The Applications also say a "copy of the Disclosure of Compensation of Attorney – official Form B203" is attached, *id.* p. 1, but there are no attachments.

[10] Doc. 8.

[11] *Id.* p. 1.

3

Also on July 29, 2025, Debtor filed a "Fee Disclosure." In the Fee Disclosure, filed "pursuant to bankruptcy Rule 2016(b),"[12] Mr. Lazzo disclosed that his law firm "received a retainer payment of $21,738 from Curtis A. Graumann paid on behalf of the Debtor for fees and expenses to be incurred" in the case.[13] The Fee Disclosure further reported the "payment by Graumann to counsel was not a loan to debtor, and there is no obligation by Debtor for repayment."[14]

The U.S. Trustee filed objections to both the Application to Employ and the Motion to Allow Monthly Payment. The U.S. Trustee argued the Application to Employ was inadequate under Fed. R. Bankr. P. 2014 because it did not provide necessary details about the $21,738 retainer payment to the law firm, including what happened to it and when, did not address whether the law firm was a creditor of Debtor, did not explain who Mr. Graumann is or why he paid the retainer or whether he was involved in the case, and did not address whether there were any connections between Mr. Graumann and Debtor.

Regarding its objection to the Motion to Allow Monthly Compensation, the U.S. Trustee objected essentially on the same basis: a lack of detail. Debtor had not yet filed its Schedules or the information required in small business cases and had not responded to U.S. Trustee inquiries for financial information about insurance and banking. As a result, Debtor's financial situation was opaque, and the U.S.

---

[12] The Fee Disclosure referenced Federal Rule of Bankruptcy Procedure 2016. Future references to these Rules will be to Rule and number only.

[13] Doc. 7 p. 1.

[14] *Id.*

Trustee was concerned with administrative insolvency, arguing that permitting monthly compensation would favor Debtor's attorneys over other administrative claimants.

When Debtor's Schedules and supporting documents had not been filed about six weeks postpetition, the U.S. Trustee filed a motion to dismiss or convert, arguing cause existed based on (1) the lack of Schedules and failure to comply with the Court's Order to Correct, and (2) the lack of good faith because there was no going concern to preserve and no effort to maximize the value of Debtor's estate. The Court set a hearing on the U.S. Trustee's motion for September 25, 2025.

Just before the hearing, on September 24 and 25, 2025, which was almost two months postpetition, Debtor filed multiple documents: (1) an amended petition and Schedules and supporting documents, (2) its list of Equity Security Holders and Corporate Ownership Statement, (3) a response to the U.S. Trustee's motion to dismiss or convert, (4) an amended creditor matrix and amended Schedules, and (5) an Amended Application to Employ. In the Disclosure of Compensation of Attorney for Debtor filed on September 24, 2025, with the amended Schedules, Mr. Lazzo reported he had received a retainer of $21,738 that would be billed against at $350 an hour, and that the source of the compensation paid and to be paid was Debtor.[15] The Court continued the hearing on the U.S. Trustee's motion to dismiss or convert, the Application to Employ, and the Motion to Allow Monthly Compensation, and

---

[15] Doc. 41 p. 20.

5

required Debtor to file all missing documents and provide all previously requested information to the U.S. Trustee by October 10, 2025.

In the Amended Application to Employ, Debtor again sought employment of Mark J. Lazzo, P.A. as counsel for its bankruptcy estate and proposed compensation of $350 per hour for both Mr. Lazzo and Mr. Balbierz.[16] The Amended Application adds the following paragraph:

> Mark J. Lazzo, P.A. received a retainer payment of $21,738 from Curtis Graumann on behalf of Debtor. The payment was a gift and no repayment is expected. From these funds, $1,738.00 was applied to the Chapter 11 filing fee, which reduced the retainer balance to $20,000.00 at the time of filing, with no monies owed to Mark J. Lazzo P.A.[17]

Attached to the Amended Application are Amended Affidavits. Again, the Amended Affidavits for Mr. Lazzo and Mr. Balbierz are identical. As pertinent here, they include bare statements that counsel are disinterested and do "not hold or represent an interest adverse to the estate" and understand the continuing duty to disclose any disinterestedness or adverse interest.[18]

At the end of September and in early October 2025, Debtor filed additional missing documents and the hearing on the pending motions was continued again. No objection was filed to the Amended Application to Employ, and on October 20,

---

[16] Doc. 50 p. 1. The Amended Application again says a "copy of the Disclosure of Compensation of Attorney – official Form B203" is attached, but it is not attached. *Id.*

[17] *Id.* p. 1-2 ¶ 6.

[18] *Id.* p. 2-3. The Amended Affidavits also add that not only does counsel not represent a creditor of Debtor, but also that counsel does "not represent, or have connections with, any creditor of the Debtor, any party in interest, their respective attorneys and accountants, the U.S. Trustee or any other person employed in the office of the U.S. Trustee." *Id.*

6

2025, the Court entered an order granting that Amended Application to Employ, approving employment "as of the date of filing of the original Application."[19]

On October 24, 2025, Debtor filed a motion to extend the deadline to file his "Chapter 11 Subchapter V Plan and Disclosure Statement."[20] The motion acknowledged the upcoming October 27, 2025, plan filing deadline set by the Bankruptcy Code, sought a forty-five-day extension, and recognized the standard for requesting an extension under § 1189(b). The motion then stated: "Debtor is unable to timely file its Plan as: (a) its accountant has failed to timely complete Debtor's 2024 tax return; and (b) Debtor has a pending Motion to determine the amount of the claim of its primary secured creditor . . . ."[21] The U.S. Trustee responded in two ways. She first objected to the motion to extend the deadline, arguing Debtor had not satisfied the statutory standards for an extension. The U.S. Trustee then supplemented its motion to dismiss or convert to "amend and clarify" its current bases for its motion, arguing Debtor's failure to file or confirm a plan within the statutory time requirements was unreasonable and an undue delay and a basis for cause to dismiss or convert. Debtor's motion to extend the plan filing deadline was set for hearing on December 12, 2025.

On December 8, 2025, Debtor filed a Chapter 11 Subchapter V plan. At that point, the U.S. Trustee confirmed the sole basis remaining for its motion to dismiss

---

[19] Doc. 70 p. 2.

[20] Per § 1181(b), "[u]nless the court for cause orders otherwise, § 1125 does not apply in a Subchapter V case. The Court did not require a disclosure statement and although the title of Debtor's motion referenced a disclosure statement, it was not addressed in the motion.

[21] Doc. 72.

7

or convert was Debtor's failure to file a plan by the statutory deadline. The still pending motions (Debtor's motion to allow monthly compensation, the U.S. Trustee's motion to dismiss or convert, and Debtor's motion to extend the plan filing deadline) were then set for an evidentiary hearing in February 2026.

On December 11, 2025, Debtor filed a Supplemental Fee Disclosure, pursuant to Bankruptcy Rule 2016(b). Mr. Lazzo reported the law firm "received a post-petition payment of $17,500 from David A. Rendon on behalf of the Debtor for fees and expenses incurred in this case," which had been deposited in the firm's trust account.[22] The Supplemental Fee Disclosure concluded with a statement that "[t]he payment by Rendon to counsel was not a loan to Debtor, and there is no obligation by Debtor for repayment."[23] Similarly, on December 31, 2025, Mr. Lazzo filed another Supplemental Fee Disclosure with the same statement, this time for $7500 from Mr. Rendon.

On January 21, 2026, Debtor filed an amended petition, removing the indication it was a small business debtor and removing its election to proceed under Subchapter V.[24] The same date, Debtor and the U.S. Trustee filed an agreed order on the U.S. Trustee's motion to dismiss or convert and Debtor's motion to extend time to file its plan, resolving those disputes.

Shortly thereafter, on January 28, 2026, Debtor and the U.S. Trustee submitted an agreed order granting in part Debtor's motion to allow monthly

---

[22] Doc. 91 p. 1.

[23] *Id.*

[24] Doc. 112.

8

compensation. Per this agreed order, no payment of monthly fees or expenses could be "made by Debtor or with funds from Debtor's estate, unless and until Debtor has received proceeds from sales approved by the Court."[25] Debtor also acknowledged the continuing obligation to supplement its fee disclosures. The evidentiary hearing on the pending motions was then terminated. Debtor then again amended its petition, this time indicating it was a Chapter 11 small business debtor.

On February 10, 2026, Debtor filed its first interim application for allowance and payment of attorney fees and expenses. The body of the application seeks approval of fees of $73,425 and expenses of $1795.96 (for a total of $75,220.96) "incurred from August 4, 2025 through December 31, 2025."[26] It then reports that "counsel has received payments from non-Debtor's totaling $46,738 which have been applied to the fees and expenses set forth in this Application" and asks the Court to "authorize payment by Debtor of that portion of said allowed fees and expenses not previously paid by non-Debtors."[27] But the itemization attached to the application does not match the details in the application itself: while it does show total fees and expenses of $75,220.96 (with $11,393 in July 2025, $7910 in August 2025, $15,178.58 in September 2025, $11,685.26 in October 2025, $16,734.12 in November

---

[25] Doc. 119 p. 2.

[26] Doc. 125 p. 2.

[27] *Id.*

2025, and \$12,320 in December 2025), the time entries begin on July 25 (before the petition was filed) and not August 4, 2025.[28]

The U.S. Trustee objected to the interim application, arguing it should be denied in part because it seeks prepetition fees, seeks fees for the motion to extend the deadline to file the plan, seeks fees for two billers for the same office conferences, and may conflict with the agreed order on Debtor's motion to allow monthly compensation. The Court set the dispute for evidentiary hearing, and the parties filed trial briefs, which the Court has considered. Counsel for Debtor confirmed the law firm is not seeking payment of fees prior to the sale of property as required by the agreed order entered on the motion for monthly compensation,[29] and the Court therefore does not address that issue further.

## II.    Findings of Fact

At the evidentiary hearing, Mr. Lazzo testified about the law firm's work on Debtor's case and its billing records. Mr. Lazzo has practiced bankruptcy law in this area since 1986 and has had his own firm since 2002. He has done debtor work, creditor work, and trustee work. In his career, he has been involved in at least twenty Chapter 11 cases as debtor's counsel. Mr. Lazzo testified that both he and Mr. Balbierz, the other lawyer in the law firm, currently have a \$350 hourly rate,

---

[28] Mr. Lazzo testified the reference to August 4 in the body of the application was an error, and the law firm is seeking fees beginning on July 25 as indicated in the itemization attached to the application.

[29] *See* text accompanying note 25, supra.

which he believes is consistent with the area market rate. The Court finds no fault with the hourly rate.

Debtor's first contact with the law firm was a phone call from Mr. Rendon on July 25, 2025. Mr. Rendon called the firm to discuss a state court foreclosure: he reported one of Debtor's creditors obtained a default judgment for over $400,000 and a sheriff's sale had been set for July 29, 2025, four days (but only two business days) later. Mr. Lazzo discussed a potential bankruptcy case with Mr. Balbierz and the legal steps they could undertake regarding the state court default judgment (and what they believed to be an unenforceable penalty provision therein) and decided to file an urgent bankruptcy petition to stop the scheduled sheriff sale. Mr. Lazzo had multiple conferences with the client and with Mr. Balbierz.

Mr. Lazzo testified all the work the law firm did prepetition was in contemplation of a bankruptcy filing. Mr. Lazzo confirmed all time entries on July 25, July 26, and July 27, 2025, were prior to the bankruptcy filing. Regarding the time entries on July 28, 2025 (the date of filing), Mr. Lazzo testified these time entries were also all prepetition. As a result, a total of $7140 of the $75,220.96 requested was for work completed prepetition.[30]

At some point on either July 25, 26, 27, or 28, Mr. Graumann paid a $21,738 retainer to the law firm, which was deposited in the law firm's trust account. The exact date the retainer was received relative to the prepetition work done is

---

[30] The law firm's itemization shows $2205 billed on July 25, $1225 billed on July 26, $2170 billed on July 27, and $1540 billed on July 28. Doc. 125-1 pp. 28-29.

11

unknown, although the testimony was clear it was received at some point prior to filing the bankruptcy petition. Mr. Graumann has no ownership interest in Debtor and is a friend of Mr. Rendon. Mr. Lazzo testified the retainer was not a loan, but a gift of money to pay the fees incurred. The law firm was retained to prepare and file a Chapter 11 bankruptcy petition with the goal of determining the claims against Debtor, liquating Debtor's assets, and paying creditors, but again, the exact date of the firm's retention is unknown. Mr. Lazzo testified his fee agreement is with Debtor, not Mr. Graumann.

At the time the bankruptcy petition was filed on July 28, 2025, the law firm held the $21,728 retainer in its trust account, and $1738 was paid for the filing fee, so $20,000 remained in the law firm's trust account. Mr. Lazzo testified he did not apply the retainer to the prepetition fees owed prior to filing the petition because of his urgency to get the case filed before the scheduled sheriff's sale. He testified that he normally bills up to the petition and then draws down on a retainer before filing a petition, but he simply failed to follow his normal process this time due to the urgency of the case. Mr. Lazzo also testified he understood he could not apply the retainer to the fees postpetition without court approval. At some point prior to the end of the next month (August 2025), Mr. Lazzo's staff prepared the July 2025 billing statement and he reviewed it, presumably becoming aware at that point Debtor had unpaid, prepetition fees.

Mr. Lazzo's explanation for why his subsequent September 2025 Court filings failed to disclose the prepetition fees owed was not persuasive. He testified the

reason the amended application for employment of the law firm stated no money was owed to the law firm at the time of the filing of the petition was because he considered the fees owed to be covered by the retainer from funds gifted by Mr. Graumann. He testified that the amended application should have had a clarification that no money was owed "by Debtor" (because of the retainer's funding by Mr. Graumann). Mr. Lazzo testified he included those fees in his application for compensation, however, despite not considering them owed by Debtor, because he wanted to be transparent. He contrasted the fees owed in this case, where the prepetition retainer was sufficient to cover them, with fees he has agreed to waive in other cases, because in those other cases, the prepetition retainer had been exhausted with a small amount still owed, so there was not a sufficient retainer to cover the fees.

Regarding the postpetition deposits to his trust account, the law firm has received $21,738, $17,500, and $7500, for a total of $46,738. Mr. Lazzo testified that despite the fee application stating the $46,738 had been applied, the law firm would be paid from the retainers only if the Court approves the fees.

Both Mr. Lazzo and Mr. Balbierz enter their time contemporaneously, at the time services are rendered. Each reviews their own time records, and then Mr. Lazzo reviews all billing statements before they are sent out. Mr. Lazzo testified both he and Mr. Balbierz split work on Debtor's case, testifying the two of them had distinct areas of responsibility, with Mr. Lazzo also supervising. Mr. Lazzo testified that Mr. Balbierz assisted with obtaining information and documents and assisted

and briefed the state court default judgment/penalty issue. Mr. Balbierz also handled the sale of Debtor's real property and an adversary proceeding to resolve a cloud on the title of one of the pieces of real property. Mr. Lazzo testified conferences between himself and Mr. Balbierz were necessary because the issues Mr. Balbierz worked on had an impact on Debtor's plan and the creditors of the case, where Mr. Lazzo was central. Mr. Lazzo believed coordination was necessary to eliminate duplication and maximize efficiency. The law firm has no policy on office conferences and billing for the same.

As an example of billing for an intraoffice conference, on October 15, 2025, Mr. Lazzo and Mr. Balbierz both spent 0.6 of an hour in a conference, each billing Debtor $210 for that conference. Both time entries state: "Conference . . . to discuss Chapter 11 Plan, equipment auction, escrow contract default, UST Motion to Dismiss, etc."[31] Mr. Lazzo testified multiple of those matters discussed had been "assigned" to Mr. Balbierz, and the conference was necessary to split up and complete the work. Similarly, on November 18, 2025, Mr. Lazzo and Mr. Balbierz each spent 0.5 of an hour in an office conference, billing $175 each, discussing: "case, action plan, [secured creditor] objection, [auctioneer] employment, etc."[32] Another example occurred on December 31, 2025, when Mr. Lazzo and Mr. Balbierz both spent 0.6 of an hour in a conference, each billing Debtor $210 for that

---

[31] *Id.* p. 14.

[32] *Id.* p. 10. The quoted description is how Mr. Balbierz noted the time. Mr. Lazzo itemized his entry as: "Office conference with Mr. Balbierz regarding pending bankruptcy matters, strategic planning." *Id.*

14

conference, discussing: "resolution with [secured creditors'] counsel on secured claim, terms, other pending matters in case."[33] Mr. Lazzo also conferenced with Mr. Balbierz other times that week: according to Mr. Lazzo, counsel for the secured creditor and Mr. Balbierz were no longer able to work together, so Mr. Lazzo needed to work with the secured creditors' counsel to get the issue resolved.

At filing, Mr. Lazzo knew he had a ninety-day deadline to file a Subchapter V plan. Mr. Lazzo also testified, however, that he knew Debtor's tax returns were not yet complete and the issue with the state court foreclosure default judgment was not yet resolved. In October 2025, Mr. Lazzo either began drafting the plan, or at minimum, had outlined the plan.[34] Mr. Lazzo considered the statute governing extensions to permit extension when there is justification. Mr. Lazzo testified he wanted additional time to gather the information and resolve what he considered to be the most significant issues in the case, and although he believed the tax returns were arguably within Debtor's control, the resolution of the state court foreclosure case was in the Court's control.[35] As a result, on October 24, 2025, the law firm filed its motion asking for an additional forty-five days to file a Subchapter V plan.

---

[33] *Id.* p. 4. The quoted description is how Mr. Lazzo noted the time. Mr. Balbierz itemized his entry as: "Conference with Mr. Lazzo concerning case matters." *Id.*

[34] The itemization shows an entry on October 22, 2025, for "Begin to prepare Liquidating Chapter 11 Plan." *Id.* p. 16.

[35] At the time the motion to extend the deadline was filed, Debtor had filed a motion to determine the amount of the secured claim, Doc. 64, but no response to that motion had yet been filed, and it is incorrect to state the resolution of the state court issue was in the Court's control at the time. The motion was not fully briefed until December 2025, *see* Docs. 83 and 87, and at the status hearing on the motion on December 18, 2025, the parties announced a potential settlement, *see* Doc. 86. The parties ultimately settled their dispute, and a motion to approve that settlement was filed in January 2026. Doc. 113. The Court never took the issue under advisement.

15

Mr. Lazzo testified he knew there was some risk of an adverse ruling because there was a split of authority amongst courts who had considered the statute governing extensions of time. He testified that although there was no ruling from the bankruptcy court within the District of Kansas, he believed this Court's view of such motions would be a strict interpretation of the governing statute. Because he had no creditor opposition in the case, however, Mr. Lazzo thought the motion was likely to benefit the estate and would only be denied if the Court sua sponte denied it. Mr. Lazzo did not anticipate opposition from the U.S. Trustee. After the U.S. Trustee objected to the motion, Mr. Lazzo ultimately filed an amended petition to withdraw the Subchapter V election.

Mr. Lazzo testified he believes the law firm's fees are reasonable: there were novel issues in the case needing resolution, such as the secured creditor's claim which involved issues of state law concerning liquidated damages and penalties, issues concerning the marketing and liquidating of assets, membership and termination of membership issues, a piece of real property in another state, and difficulties communicating with the client.

## III. Conclusions of Law

### A. Jurisdiction and Burden of Proof

The employment and compensation of officers of the estate is governed by §§ 327, 329, and 330 and Rules 2014 and 2016 and are core matters under 28 U.S.C. §

16

157(b)(2)(A) ("matters concerning the administration of the estate"), over which this Court may exercise subject matter jurisdiction.[36] Venue is proper in this District.[37]

The party seeking compensation under the Bankruptcy Code has the burden of proof on all issues related to the fee application.[38] Counsel has the duty to perform the obligations under the Code with respect to compensation, and to show that the proposed terms and conditions of employment are reasonable.[39]

## B. Employment and Compensation

A Chapter 11 small business debtor may employ an attorney to represent or assist the debtor in possession in performing its duties during the Chapter 11 case, subject to court approval thereof.[40] Under § 327(a), the attorney must be disinterested and must not hold or represent an interest adverse to the estate. Under § 1107(b), "a person is not disqualified for employment under section 327 . . . solely because of such person's employment by or representation of the debtor before

---

[36] 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(G), and Amended Order of Reference, D. Kan. S.O. 13-1.

[37] 28 U.S.C. § 1409(a).

[38] *See In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d 1239, 1246 (10th Cir. 2013) ("The burden is on the party requesting fees to establish that its request is reasonable."); *In re Kitts Dev., LLC*, 474 B.R. 712, 719-20 (Bankr. D.N.M. 2012) ("The party seeking an award of compensation bears the burden of demonstrating that the services provided were actual, necessary, and beneficial to the estate.").

[39] *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997).

[40] § 327(a) ("the trustee, with the court's approval, may employ one or more attorneys . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title"); § 1107 (rights of debtor in possession). The same is true of a small business debtor that has elected to be treated under Subchapter V of Chapter 11. *See* § 1184 (stating that a subchapter V "debtor in possession shall have all the rights . . . and powers, and shall perform all functions and duties . . . of a trustee serving in a case under this chapter"). At the time counsel was employed, Debtor was proceeding under Subchapter V. Post-employment, Debtor removed that designation and is now proceeding as a small business debtor. The statutes and Rules governing employment and compensation are the same for either type of Chapter 11 debtor.

17

the commencement of the case." But under § 328(c), the court "may deny allowance of compensation for services" if at any time "such professional person is not a disinterested person." The term "disinterested person" is defined by § 101(14)(C):

> The term 'disinterested person' means a person that– – (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

Section 101(10)(A) defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."

Rule 2014 then governs the procedure for employment, and mandates that the application to employ state specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.[41] The application to employ must also be accompanied by a verified statement that discloses the connections required to be

---

[41] Rule 2014(a)(2). This Court also has guidelines for Employment and Compensation of Professionals, but the guidelines "do not amend or replace applicable sections of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, District of Kansas Local Bankruptcy Rules, and case law." Employment and Compensation of Professionals, U.S. Bankruptcy Court, District of Kansas, Chief Judge Mitchell L. Herren, https://www.ksb.uscourts.gov/judges-info/herren.

18

disclosed in the application.[42] The purpose of the Rule 2014 disclosures are so the court may "evaluate fully whether the professional is actually 'disinterested.'"[43]

To fulfill the requirements imposed by Rule 2014, an "attorney has a duty to fully disclose any connections with the debtor or creditors that might create a possible conflict, and all fee arrangements with the debtor in possession."[44] Proposed counsel for the debtor maintains a "duty to disclose any actual or potential conflicts of interest with the estate."[45] The affidavit in support of an application to employ must contain "specific facts" that enable the Court to rule out conflicts.[46] And this Court's Local Rule requires "prompt" supplementation after "learning of any additional material information."[47]

In addition, under § 329(a), an attorney representing a debtor in a bankruptcy case must "file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." Under Rule 2016(b), within fourteen days of the petition, every debtor's attorney must file and send to the U.S. Trustee the statement required by §

---

[42] Rule 2014(a)(3).

[43] *In re Smitty's Truck Stop, Inc.*, 210 B.R at 850.

[44] *Id.* (citing *Interwest Bus. Equip., Inc. v. U.S. Trustee (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 316 (10th Cir. 1994)).

[45] *Id.*

[46] *In re Interwest Bus. Equip., Inc.*, 23 F.3d at 318.

[47] D. Kan. LBR 2014.1(a).

19

329. Supplemental statements must then be filed within fourteen days after any payment or agreement to pay not previously disclosed.[48]

And finally, compensation is governed further by § 330. Under § 330(a)(1), this Court may award to a professional employed under § 327 the "reasonable compensation for actual, necessary services rendered."[49] The Court may award less compensation than is requested.[50] Under § 331, an attorney whose employment has been approved by the Court may then seek interim compensation from the Court, prior to final approval of that compensation under § 330.[51] Rule 2016 also governs the procedure for applications for compensation. Under subsection (a) of Rule 2016, an entity seeking compensation, interim or final, must file an application with a detailed statement of the services rendered, time expended, and expenses incurred, and the amounts requested.[52]

---

[48] Rule 2016(b)(2).

[49] The only procedure prescribed by § 330 is a requirement that fee awards be made "[a]fter notice to the parties in interest and the United States Trustee and a hearing." § 330(a)(1).

[50] § 330(a)(2).

[51] This District has adopted LBR 2016.1. Pertinent here, subsection (a) of LBR 2016.1 permits counsel employed in Chapter 11 cases to "file a separate motion for monthly payment of fees and expenses."

[52] Rule 2016(a) requires: "an application showing: (A) in detail the amounts requested and the services rendered, time spent, and expenses incurred; (B) all payments previously made or promised for services rendered or to be rendered in connection with the case; (C) the source of the paid or promised compensation; (D) whether any previous compensation has been shared; (E) whether an agreement or understanding exists between the applicant and any other entity for sharing compensation for services rendered or to be rendered in connection with the case; and (F) the particulars of any compensation sharing or agreement or understanding to share, except with a member or regular associate of a law or accounting firm."

20

### C.  Prepetition Fees

Of the $73,425 in fees requested,[53] the law firm seeks approval of $7140 in prepetition fees owed to the firm by Debtor. The Court denies these fees for the law firm's failure to disclose and its lack of disinterestedness.

The law firm failed in its disclosure requirements to this Court. On the day the petition was filed, July 28, 2025, both Mr. Lazzo and Mr. Balbierz filed deficient affidavits in support of the application to employ. The affidavits stated the law firm was disinterested, but that was not correct. The law firm was a creditor in Debtor's case since it was owed $7140 in fees that had not been paid at the time of filing. The retainer—the gift of funds *to Debtor*, with no expectation of repayment—was disclosed the next day, on July 29, 2025, in the Rule 2016(b) Fee Disclosure. But despite the U.S. Trustee objecting to the deficient Rule 2014 affidavits in its objection to the application to employ, the law firm did nothing to supplement at that point.

After the U.S. Trustee filed a motion to dismiss or convert, based at least in part on the failure to provide information in the case, almost two full months after the case was filed, counsel filed new affidavits in support of an amended application to employ. In the amended application to employ counsel stated no money was owed to the law firm at the time of filing. But this was also incorrect. And by that point, based on Mr. Lazzo's testimony, counsel would have (or should have) known that

---

[53] All expenses requested were incurred postpetition.

21

was incorrect. The amended affidavits also said counsel was disinterested; but again, that was incorrect.

To this day, counsel has never filed fully accurate disclosures about the state of the retainer at filing and what was owed by Debtor to the law firm at filing. Not only that, in the first interim application for payment of fees and expenses, the law firm incorrectly stated the fees sought covered time billed postpetition, while the itemization begins prepetition. In short, full and complete disclosures of the fees owed prepetition and the status of the law firm in relation to Debtor were not made.

In addition to these disclosure failures, the Court also denies the prepetition fees for the reason that forms the other side of this same coin; because the law firm has not carried its burden to show it was disinterested at the time the case was filed. Counsel must be disinterested at the time of employment, as required by § 327(a).

The question of "disinterested person" asks whether the law firm's attorneys, individually, hold "an interest materially adverse to the interest of the estate."[54] The requirements of § 327 "serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provided untainted advice and assistance in furtherance of their fiduciary

---

[54] Holding an interest adverse to the estate is a different question from whether the law firm represents those with interests adverse to the estate. *See Interwest Bus. Equip., Inc. v. U.S. Trustee (In re Interwest Bus. Equip., Inc.)*, 23 F.3d. 31, 317 (10th Cir. 1994) (stating § 327(a)'s requirements separately, as whether "professionals are disinterested and do not represent interests adverse to the estate" (emphasis added)); *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 629 (2d Cir. 1999) (holding that § 327(a)'s disinterested person requirement "is properly read to implicate only the personal interests of the professional whose disinterestedness is under consideration. Accordingly, to run afoul of section 101(14)[C], a professional personally must 'have' the prohibited interest.").

responsibilities."[55] In the Tenth Circuit, the disinterestedness requirement excludes an attorney "with some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules."[56]

The law firm's position is that at the time of filing *Debtor* did not owe any fees because the law firm had the retainer money gifted from Mr. Graumann in its trust account in an amount sufficient to cover the fees, even though the firm had not yet applied those funds. But at the time of the filing of the case, the fees were, and still are, owed to the firm by Debtor. Furthermore, the firm had no agreement with Mr. Graumann, only with Debtor, and in its Amended Application to Employ the firm expressly stated the funds were "a gift."[57] The money in the trust account gifted by Mr. Graumann is Debtor's money,[58] and as such, an estate asset.[59]

---

[55] *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994); *see also Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850-51 (B.A.P. 10th Cir. 1997) ("Because of the unique nature of the bankruptcy estate, the debtor in possession is considered a fiduciary of that estate. For the same reason, courts have imposed a fiduciary duty upon counsel for the debtor in possession. This duty requires the attorney to exercise independent professional judgment on behalf of the estate.").

[56] *In re Cook*, 223 B.R. at 789.

[57] Doc. 50 p. 1.

[58] The Court flatly rejects the argument that the prepetition fees owed at the time of filing did not need to be disclosed, and that those prepetition fees did not create any disinterestedness, because money sitting in the trust account to pay the prepetition fees came from Mr. Graumann, a nondebtor. This argument contradicts Debtor's position earlier in the case that the money was gifted to Debtor. *See* Doc. 50 p. 1 (stating in the Amended Application to Employ that the money in the trust account was a gift) and Doc. 7 p. 1 (stating in the Fee Disclosure that the retainer was "paid on behalf of the Debtor for fees and expenses to be incurred" in the case).

[59] *See, e.g.*, *In re Landau*, No. 20-21114-11, 2021 WL 2523992, at *4 (Bankr. D. Kan. May 5, 2021) ("A security retainer secures payment of fees for future services that the attorney is expected to render—it is not a present payment for future services, but is property of the bankruptcy estate that will be earned in the future. (internal citations omitted)). "The attorney may apply for compensation for services rendered against the retainer, and any unearned portion of the retainer is returned to the estate." *Id. See also In re Wagers*, 514 F. 3d 1021, 1028 (10th Cir. 2007) (applying Kansas law to conclude "a retainer paid as an advancement for future services is not earned by the attorney until services have been performed, and remains the client's money until then" (internal quotations omitted)).

23

Counsel asks to excuse its errors based on the rushed filing, but even if that were a valid excuse, it would not excuse the failure to correct or supplement. An emergency bankruptcy filing does not excuse disclosure failures.

In *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, the debtor, like herein, filed an emergency bankruptcy petition and did not fully comply with disclosure requirements.[60] The Tenth Circuit BAP foreclosed any argument that counsel's failures to disclose should be excused: it does not matter that a bankruptcy petition is filed on an emergency basis, that a failure to disclose was not done in bad faith, or that a later (non-disclosure statement document) disclosed the information. The BAP stated:

> Appellant attempts to excuse himself by arguing that the Chapter 11 was filed on an emergency basis, implying that this omission was simply an oversight. However, this does not excuse his failure to file a supplemental statement to correct the error. Appellant further asserts that his failure to disclose the retainer to the court was not done in bad faith or in an effort to conceal. The court did not specifically find bad faith or an effort to conceal, but those findings are not necessary to hold Appellant in violation of § 329 and Rule 2016(b). Even a negligent or inadvertent failure to disclose the retainer is sufficient to deny fees. Appellant also argues that the retainer was disclosed in [the debtor's] statement of affairs. If we accepted this argument, we would nullify the § 329 and Rule 2016(b) disclosure requirements, which are designed to enable courts to oversee the fee arrangement between debtor and its counsel. More importantly, it is not the court's job to search through the record to find all relevant facts relating to an attorney's employment. It is counsel's duty to provide the court with the information necessary to determine whether to appoint counsel.[61]

---

[60] 210 B.R. 844, 846 (B.A.P. 10th Cir. 1997).

[61] *Id.* at 849.

24

In *In re Smitty's Truck Stop, Inc.* the failures to disclose related to a retainer and the source of that retainer. Here, the failures to disclose related to the prepetition fees owed and counsel's disinterestedness. But the impact is the same: both the U.S. Trustee and this Court had to search for information that should have been disclosed initially, and counsel should have supplemented the Rule 2014 statements.[62] Even at the time the amended application to employ was filed in late-September 2025, which by counsel's own admission, he would have known about the prepetition fees owed at that time, the issue was not disclosed. In the future, counsel should spontaneously, timely, and completely disclose all connections, any retainers, and any fees owed at the beginning of each case, to avoid the situation at hand.[63]

Counsel also argues pre-filing charges should not make counsel disqualified, citing *In re Schupbach Investments*, wherein Judge Somers of this Court discussed a 1987 First Circuit case, noting in dicta that standard prepetition services "'will not serve to disqualify an otherwise eligible attorney'" based on disinterestedness.[64] But that conclusion has since been rejected by many bankruptcy courts to consider the

---

[62] Under Rule 2014, a law firm has "an unqualified obligation to make reasonable inquiry to determine whether the original application [is] well grounded in fact" before it is filed. *In re Sixth Ave. Car Care Ctr.*, 81 B.R. 628, 630 (Bankr. D. Colo. 1988).

[63] *See, e.g.*, *Winship v. Cook (In re Cook)*, 223 B.R. 782, 794 (B.A.P. 10th Cir. 1998) ("Absent the spontaneous, timely, and complete disclosure required by § 327(a) and Rule 2014, court-approved counsel proceed at their own risk." (internal citations omitted)).

[64] No. 11-11425, 2013 WL 5495577, at *12 (Bankr. D. Kan. 2013) (quoting *In re Martin*, 817 F.2d 175, 180 n.5 (1st Cir. 1987)). The *In re Schupbach Investments* case was overruled, *see Rose Hill Bank v. Mark J. Lazzo, P.A. (In re Schupbach Investments, LLC)*, Nos. KS-13-077, BR 1-11425, KC-13-078 (B.A.P. 10th Cir. Nov. 25, 2014) and *Mark J. Lazzo, P.A. v. Rose Hill Bank (In re Schupbach Investments, L.L.C.)*, 808 F.3d 1215 (10th Cir. 2015), although the specific issue of whether counsel is disqualified as disinterested because of prepetition fees owed was not an issue in the appeals.

25

issue based on the plain reading of § 327 and § 101(14).[65] And the Tenth Circuit, although not ruling on the exact issue, has strictly construed § 327(a).[66] In the Tenth Circuit, employment is a prerequisite to payment.[67] And many bankruptcy courts have found that a law firm's prepetition unpaid services render it disinterested at the time of the filing of the petition.[68]

Further, the Circuits that have addressed the issue since the First Circuit's dicta have concluded a prepetition claim *is* disqualifying, as it makes the professional a creditor and therefore not disinterested as required by § 327(a) and

---

[65] *See, e.g.*, *In re D&H Machine Serv., Inc.*, 557 B.R. 609, 616-17 (Bankr. E.D. Tenn. 2016) (citing and discussing cases).

[66] *See Interwest Bus. Equip., Inc. v. U.S. Trustee (In re Interwest Bus. Equip., Inc.)*, 23 F.3d. 31, 316 (10th Cir. 1994) (stating § 327(a) requires that "counsel to a debtor in possession must meet the high standards of undivided loyalty established by § 327(a)"); *In re Golesis*, 659 B.R. 767, 773–74 (Bankr. D. Utah 2024) ("Chapter 11 debtors need competent professionals to shepherd them through the complexities of the bankruptcy process. However, such professionals must qualify and be approved by the court under the gatekeeping function of § 327 and Fed. R. Bankr. P. 2014, and such approval is the predicate for compensation. Indeed, until the bankruptcy court approves the employment application, the Tenth Circuit considers bankruptcy professionals to be mere volunteers who cannot be compensated. . . . In other words, absent the most extraordinary circumstances," a professional cannot be compensated for services rendered before the filing of its application to employ and its subsequent approval by the court." (internal quotations omitted)). *See also In re Fibermark, Inc.*, 349 B.R. 385, 393 n.3 (Bankr. D. Vt. 2006) ("Compensation for services rendered without the Court's approval or prior to the retention date established by the Court is not compensable from the estate under § 330.").

[67] *In re Interwest Bus. Equip., Inc.*, 23 F.3d at 318 ("any professional not obtaining approval is simply considered a volunteer if [the professional] seeks payment from the estate").

[68] *Kun v. Mansdorf (In re Woodcraft Studios, Inc.)*, 464 B.R. 1 (N.D. Cal. 2011) (affirming decision of the bankruptcy court denying fees where the debtor's counsel disclosed a $5000 retainer but did not disclose prepetition fees owed to counsel and first disclosed those prepetition fees owed in an interim application for compensation); *In re D&H Machine Serv., Inc.*, 557 B.R. 609, 622-23 (Bankr. E.D. Tenn. 2016) (denying fees for prepetition services because those prepetition fees were not disclosed in an initial application for employment); *In re Lackawanna Med. Grp., P.C.*, 323 B.R. 626, 634 (Bankr. M.D. Pa. 2004) ("The Court will exercise its discretion and deny [the law firm's] request in its final fee application for those services provided prepetition as represented in the final fee application. The Court does so because on the date of the filing of the petition, [the law firm] was a creditor of the Debtor for those prepetition services and not disinterested under the terms of the Bankruptcy Code.").

26

the definitions in § 101(14) (disinterestedness) and § 101(10)(A) (creditor).[69] Section 1107(b), which states that notwithstanding § 327(a), counsel is not disqualified "solely because of such person's employment by or representation of the debtor before the commencement of the case," does not change this result. Section 1107(b) does not address Chapter 11 debtors' counsel who not only was previously employed by the debtor but is also still owed fees. In other words, § 1107(b) does not address counsel who hold a claim against the estate at filing because of the prior retention.

The Court concludes the prepetition fees of $7140 sought by the law firm must be denied. Not only were the law firm's disclosures in this case inadequate,[70] but approval of the fees would make the law firm not disinterested at the filing of the case. As noted above, it is the law firm's duty to perform its obligations under the Code and Federal Rules of Bankruptcy Procedure with respect to employment and compensation, and to show that the proposed terms and conditions of

---

[69] *Staiano v. Pillowtex, Inc. (In re Pillowtex, Inc.),* 304 F.3d 246, 253 n.5 (3d Cir. 2002) (in dicta, stating a prepetition "claim for fees would transform [the law firm] into a prepetition creditor, which would pose a disqualifying conflict"); *U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994) (holding that §§ 327(a) and 101(14) "unambiguously forbid a debtor in possession from retaining a prepetition creditor to assist it in the execution of its Title 11 duties," finding no ambiguity in § 327(a) and relying on "the plain language of these statutory provisions"); *Electro-Wire Prods., Inc. v. Sirote & Permutt, PC. (In re Prince)*, 40 F.3d 356, 361 (11th Cir. 1994) (law firm "cannot possibly qualify as a 'disinterested person'" when it is "a creditor of the Debtor, albeit it for a relatively small amount;" prepetition fees owed for estate planning work); *Pierce v. Aetna Life Ins. Co. (In re Pierce)*, 809 F.2d 1356, 1362-63 (8th Cir. 1987) ("[I]f a professional is a creditor, then that person is not disinterested under 11 U.S.C. § 101[(14)]) and is subject to disqualification under Section 327(a). As this court recently noted, the professional's complaint in this area lies with Congress, not the courts."; prepetition claim for services rendered in contemplation of filing).

[70] Certainly, at the time the original application to employ was filed, the law firm's disclosures were inadequate, and the Court is not confident the law firm took its obligations seriously. Only after the U.S. Trustee objected did the law firm amend or provide additional information, and even then, the law firm either still had not undertaken the appropriate inquiry into its records or knew it was owed prepetition fees but thought it could maneuver around them, and either option is unacceptable.

27

employment are reasonable.[71] Because to be employed a professional must be

disinterested, the Court declines to approve prepetition fees and destroy the law

firm's disinterestedness. The Court concludes the denial of the payment of the

$7140 from estate funds remedies these issues and ensures compliance with the

Bankruptcy Code.[72]

### D.    Postpetition Fees

As noted above, compensation of professionals is governed by § 330. Under §

330(a)(1), this Court may award to a professional employed under § 327 the

"reasonable compensation for actual, necessary services rendered."[73] "Bankruptcy

courts have broken down the elements of § 330(a) as follows: To be compensable, the

---

[71] *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (10th Cir. BAP 1997).

[72] *See In re Interwest Bus. Equip., Inc.*, 23 F.3d. at 317 (stating §§ 327(a), 328, and 329 compel the conclusion the bankruptcy court has discretion to oversee employment and compensation of professionals). In *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, the Tenth Circuit BAP cited the Tenth Circuit's *Interwest Business Equipment, Inc.* decision for the proposition that "Failure to disclose connections that have the potential for creating a conflict warrants a denial of all compensation to debtor's counsel." *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997) (citing *In re Interwest Bus. Equip., Inc.*, 23 F.3d at 318). But that citation actually supports the proposition that it was not an abuse of discretion for the bankruptcy court to deny approval of a professional's employment based on an application to employ and accompanying affidavit that did not contain "specific facts" that would enable to bankruptcy court to rule out conflicts. *In re Interwest Bus. Equip, Inc.*, 23 F.3d at 318. *See also Gray v. English*, 30 F.3d 1319, 1324 (10th Cir. 1994) (bankruptcy court has discretion to assess fee awards when an attorney loses disinterestedness, although in "exercising the discretion granted by the statute we think the court should lean strongly toward denial of fees, and if the past benefit to the wrongdoer fiduciary can be quantified, to require disgorgement of compensation previously paid that fiduciary even before the conflict arose").
    While the default sanction for an attorney's failure to disclose compensation under § 329 and Rule 2016 is full disgorgement, *SE Property Holdings, LLC v. Stewart (In re Stewart)*, 970 F.3d 1255, 1267 (10th Cir. 2020), the failures to disclose here did not related to Rule 2016 and fee arrangements, and the Court concludes disallowance of the prepetition fee is the appropriate remedy in this case. The law firm immediately sought approval o its employment in this case, had no obvious conflicts of interest, disclosed all compensation arrangements, and received no funds without disclosure or court approval.

[73] The only procedure prescribed by § 330 is a requirement that fee awards be made "[a]fter notice to the parties in interest and the United States Trustee and a hearing." § 330(a)(1).

28

fees must be for services that were 'actual' and 'necessary.' If the applicant clears these hurdles, then the fees must be 'reasonable.'"[74]

The law firm seeks total postpetition fees of $66,285 and expenses of $1795.[75] The U.S. Trustee objects to $4490 of the postpetition requested fees, arguing no fees should be awarded for "unreasonable" work.

### 1. $1200 Requested for the Motion to Extend

Specifically, the U.S. Trustee argues $1200 requested by the law firm for filing the motion to extend the Subchapter V plan filing deadline was unreasonable, because counsel "did not even attempt to satisfy the standard" for those motions and the work did not benefit the estate.[76]

The deadline to file a Subchapter V plan is set by § 1189(b), which states:

> The debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable.

Although bankruptcy courts "agree that § 1189(b) imposes a stricter standard than the 'for cause' standard set forth in § 1121(d)(1) that governs extensions of time to file a plan in chapter 11 cases not governed by subchapter V," there is disagreement about what "circumstances" qualify for an extension under § 1189.[77] "The

---

[74] *In re Koba Ltd. P'ship*, No. 5584901, 2019 WL 5584901, at *3 (Bankr. D.N.M. Sept. 30, 2019). *See also In re Miller*, No. 25-14357 KHT, 2026 WL 692656, at *3 (Bankr. D. Colo. Mar. 11, 2026) ("Whether services are actual, necessary, and beneficial to the estate is a threshold inquiry.").

[75] The total fee request is $73,425, and the Court removes the $7140 determined to be for prepetition work.

[76] Doc. 133 p. 7.

[77] *In re Trinity Legacy Consortium, LLC*, 656 B.R. 429, 434 (Bankr. D.N.M. 2023).

disagreement centers around whether the court may only consider whether the delay was due to circumstances beyond the debtor's reasonable control or whether the court can take other things into account that relate to the subchapter V case, such as undue prejudice, lack of good faith, or whether the debtor has made progress in drafting a plan."[78] Some courts have adopted an equitable approach, focusing on the word "justly" in § 1189(b).[79] Other courts have adopted a strict interpretation foreclosing equitable considerations, arguing it is required by the plain meaning of the statute.[80] This Court has not issued a decision on the question.

In the motion to extend, filed before the expiration of the statutory deadline, counsel acknowledged the upcoming deadline and the statutory standard for requesting an extension under § 1189(b). The motion then proffered two bases for an extension: 1) that Debtor's accountant had failed to timely complete a needed tax return and 2) the pending motion to determine the secured claim.

First, the Court disagrees with the U.S. Trustee's contention that counsel did not attempt to meet the § 1189(b) standard. There are varying versions of the types of "circumstances" that qualify for an extension, and counsel stated Debtor's circumstances at the time. Second, the U.S. Trustee's contention the services at issue—the motion—were not necessary to the administration of, or beneficial

---

[78] *Id.*

[79] *E.g.*, *Id.* at 439-40 (adopting an equitable, consideration of all the circumstances inquiry).

[80] *E.g.*, *In re Signia, Ltd.*, No. 23-14384 TBM, 2024 WL 331967, at *11, *4 (Bankr. D. Colo. Jan. 29, 2024) (adopting strict interpretation of § 1189(b) based on its plain meaning and holding there must be a true circumstance beyond the debtor's control, giving examples such as an ordered shutdown, a natural disaster, a death, or a strike).

30

toward the completion of the case and therefore were not reasonable is also not well taken. Measuring the benefit to an estate from a professional's work is a nuanced question:

> "Benefit" to the estate is measured by considering whether the services were necessary to the administration of, or beneficial toward the completion of a case under this title. The appropriate time for measuring benefit to the estate is as of the time the services are provided, and not at the time the court ultimately reviews the fee application. Further, benefit to the estate for services provided by counsel for a Chapter 11 debtor in possession is not restricted to success measured by confirmation of a plan or the prospect of confirming a plan. Courts may allow compensation where counsel's services promoted the bankruptcy process and contributed to the administration of the estate, but did not otherwise provide an economic benefit to the estate.[81]

Here, at the time the motion was filed, counsel knew Debtor would not be able to get a Subchapter V plan timely filed without an extension because of the two pending issues. The motion was not "successful" because of the U.S. Trustee's objection and Debtor's ultimate redesignation to a small business Chapter 11, but this Court had not, and has not, issued a decision interpreting § 1189(b), and the law firm's motion, if successful, would have saved the Subchapter V option for Debtor. The motion was integral to the bankruptcy process in this case and contributed to the administration of Debtor's bankruptcy estate. It was not unreasonable to file the motion to extend the deadline for the filing of a Subchapter V plan. There are bankruptcy courts that permit those extensions based on

---

[81] *Rose Hill Bank v. Mark J. Lazzo, P.A. (In re Schupbach Invs., LLC)*, No. KS-13-077, BR 11-11425, KS-13-078, 2014 WL 6680122, at *8 (B.A.P. 10th Cir. Nov. 25, 2014) (internal quotations, citations, and alteration omitted).

31

equitable considerations, and at the time the motion was filed, the law firm took a

reasonable action to secure an extension and keep Debtor within Subchapter V.[82]

### 2. $3290 Requested for Intraoffice Conferences

The law firm's fee request includes multiple conferences between Mr. Lazzo

and Mr. Balbierz. The U.S. Trustee argues $3290 in the fee request for multiple

conferences between Mr. Lazzo and Mr. Balbierz should not be compensated, as

more than one attorney should not charge for a conference unless counsel can show

the bankruptcy estate benefitted from each individual's specific area of expertise.[83]

The law firm argues those conferences were necessary for the efficient handling of

Debtor's case: that it was most efficient to split up the large volume of work, but

that different aspects impacted others, and so conferences were necessary to

coordinate efforts. The U.S. Trustee argues conferences are fine, but only one

lawyer should charge for them unless there is a showing the bankruptcy estate

benefitted from each individual's specific area of expertise.

The Court declines to impose the U.S. Trustee's requested bright-line rule,

and instead assesses such conferences for reasonableness.[84] Fees for intraoffice

conferences where multiple lawyers each charge for the same conference would not

---

[82] *See, e.g.*, *Mkt. Ctr. E. Retail Prop., Inc. v. Lurie (In re Mkt. Ctr. E. Retail Prop., Inc.)*, 730 F.3d 1239, 1248 (10th Cir. 2013) ("[U]nder § 330, the payment of fees does not depend on whether one party has prevailed over the other."); *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 274 (5th Cir. 2015) ("Section 330 . . . explicitly contemplates compensation for attorneys whose services were reasonable when rendered but which ultimately may fail to produce an actual, material benefit.").

[83] Doc. 133 p. 6-7.

[84] *See, e.g.*, *In re Leonard Jed Co.*, 118 B.R. 339, 347 (Bankr. D. Md. 1990) ("excessive use of office conferences and unnecessary duplication of effort will result in reduction of fees when they are unreasonable").

32

be appropriate if the conference was for training associates or new professionals.[85]

In addition, time spent on generalized "conferences" between attorneys may not be

compensable when the billing entries are not sufficiently specific and do not indicate

what happened at the conference.[86] But attorney conferences to monitor progress on

delegated tasks, compare status on duties divided among attorneys, or to strategize

next steps or case direction are examples of the very types of communication

between attorneys that ultimately save the bankruptcy estate time and money

when compared to each attorney handling his or her own tasks in a silo and not

coordinating with the others. It is unrealistic to expect attorneys working on a

project to read each other's minds, and it is unfair to expect them to work for free

when coordinating with each other.[87] When more than one attorney bills for a

conference, however, there should be some justification for both lawyers' need to

participate in that conference.[88]

---

[85] *In re Big Rivers Elec. Corp.*, 233 B.R. 768, 780 (Bankr. W.D. Ky. 1999), rev'd on other grounds, 252 B.R. 393 (W.D. Ky. 2000) ("While training and reviewing the work of associates and new professionals are necessary functions, the costs associated therewith are [overhead] expenses to the firm.").

[86] *Case v. Unified Sch. Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (time spent on generalized "conferences" between attorneys is not necessarily compensable when the billing entries are not sufficiently specific and do not indicate what happened at the conference).

[87] *See, e.g., In re New Boston Coke Corp.*, 299 B.R. 432, 445 (Bankr. E.D. Mich. 2003) (noting compensation may be approved for intraoffice conferences "at the beginning of a case to assign work, or at a critical juncture in the case to define duties, or to delegate jobs and then to have people perform those jobs, or to discuss the status of various matters in a large and complicated bankruptcy").

[88] *Id.* (valid reason must be given for more than one attorney to charge for intraoffice conferences and a "showing that each attorney contributed to the hearing or conference").

33

The Court has reviewed the itemization and counsel's testimony and finds no duplication of services.[89] The conferences were brief, often lasting less than an hour, and covered multiple topics. Mr. Lazzo took the lead on the typical bankruptcy case issues, while Mr. Balbierz took the lead on the more typical litigation-oriented issues. Of course, those issues would impact each other, and counsel needed to discuss those impacts. As a result, both lawyers were justified to bill for the conferences as they each contributed to the conferences.

3.      *Application of § 330(a)(3) and Johnson Factors*

Per § 330(a)(3), to determine the amount of reasonable compensation, a bankruptcy court must assess "all relevant factors," which includes:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[90]

---

[89] Under § 330(a)(4)(A), "the court shall not allow compensation for-- (i) unnecessary duplication of services."

[90] § 330(a)(3).

34

In the Tenth Circuit, these § 330(a)(3) factors must be considered, along with twelve additional factors set out in *Johnson v. Georgia Highway Exp., Inc.* (the "*Johnson* factors").[91] The *Johnson* factors are

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly;

(4) The preclusion of other employment by the attorney due to acceptance of the case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.[92]

As noted above, the "burden is on the party requesting fees to establish that its request is reasonable."[93]

---

[91] *See Mkt. Ctr. E. Retail Prop., Inc. v. Lurie (In re Mkt. Ctr. E. Retail Prop., Inc.)*, 730 F.3d 1239, 1247 (10th Cir. 2013) ("Subsequent to the adoption of § 330, this circuit has continued to consider the *Johnson* factors in addition to the § 330(a) factors in determining reasonable attorney's fees."); *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

[92] *Id.* (citing *Johnson*, 488 F.2d at 717-19).

[93] *Id.* at 1246.

The Court has considered all the relevant factors and concludes not only the challenged fees of $1200 for the motion to extend and the $3290 for the office conferences, but also the overall postpetition fees of $66,285 are reasonable. First, the Court considers the § 330(a)(3) factors. The time spent on the individual services and the time spent overall on the case to date has been reasonable. The rates by both Mr. Lazzo and Mr. Balbierz are in line, if not below, market rates for the services provided. The Court has already concluded the services addressed above were necessary and beneficial toward the completion of this case, and the Court has reviewed the itemization in full, also concluding the services overall were necessary and beneficial. The law firm spent a reasonable amount of time on the tasks at hand considering the overall complexity of this case and the nature of the issues at play. Both Mr. Lazzo and Mr. Balbierz are experienced bankruptcy counsel and showed the appropriate level of skill commensurate with their experience. And the fees sought are reasonable in comparison to customary compensation charged from skilled bankruptcy practitioners in this area.

The Court next considers the relevant *Johnson* factors. As just addressed, the time and labor required and spent in this case was reasonable based on the additional nuances in this bankruptcy proceeding. There were unusual issues that needed to be resolved within the bankruptcy case. The law firm showed the appropriate skill to perform these services and the fees are customary and reasonable for the work performed. The client in this case imposed additional issues based on the emergency nature of the case filing and Debtor's delay in getting

36

information to the law firm. The Court is familiar generally with rates and charges by law firms for both bankruptcy work and non-bankruptcy work and the fees sought are not excessive compared to awards made in similar cases.

After considering the record in this case, the testimony at the evidentiary hearing, and all relevant circumstances, including the factors set forth in § 330(a)(3) and the *Johnson* factors, the Court concludes the requested postpetition fees of $66,285 are "reasonable compensation for actual, necessary services rendered."[94]

## IV.    Conclusion

The Court grants in part and denies in part the law firm's interim fee application.[95] The Court disallows the prepetition fees of $7140 and allows the postpetition fees of $66,285.

**It is so Ordered.**

### #

---

[94] § 330(a)(1).

[95] Doc. 125.